NORA J CHOROVER (Bar No. 547352)                    Filed Electronically 3/3/16
Law Office of Nora J. Chorover
11 Green Street
Boston, MA  02130
617-477-3550

Attorney for Plaintiff
CLEAN WATER ACTION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAN WATER ACTION,<br><br>                    Plaintiff,<br><br>     v.<br><br>J.P. ROUTHIER AND SONS<br>RECYCLING CORPORATION,<br><br>                   Defendant. | Case No. 1:16-cv-10457<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Clean Water Act,<br>33 U.S.C. §§ 1251 to 1387) |

CLEAN WATER ACTION ("CWA") by and through its counsel, hereby alleges:

### INTRODUCTION

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Clean Water Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act" or "the Act"). Plaintiff seeks declaratory judgment, injunctive relief, and other relief the Court deems appropriate for Defendant's illegal discharges of polluted stormwater to adjacent wetlands and waterways, including but not limited to Bennetts Brook and its tributaries ("Bennetts Brook"). J.P. Routhier and Sons Recycling Corporation. ("J.P. Routhier") has operated a tire recycling facility at Berkshire Boulevard and Willow Road in Ayer, Massachusetts (the "Facility") since at the latest June 1, 2015. As rain or snow melt comes into contact with the Facility, it picks up pollutants and flows off the Facility into Bennetts Brook.

2.      Activities that take place at industrial facilities, such as material handling and storage, are often exposed to the weather. As runoff from rain or snow melt comes into contact with these materials, it picks up pollutants and transports them to nearby storm sewer systems, rivers, lakes or coastal waters. Stormwater pollution is a significant source of water quality problems for the nation's waters. The Massachusetts Department of Environmental Protection has determined that stormwater runoff represents the single largest source responsible for water quality impairments in the Commonwealth's rivers, lakes, ponds, and marine waters.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

4.      On November 30, 2015, Plaintiff provided notice of Defendant's violations of the Act, and of its intention to file suit against Defendant (the "Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("DEP"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

5.      More than sixty days have passed since notice was served on Defendant and the state and Federal agencies. Neither EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

6.      Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

7.      Plaintiff CLEAN WATER ACTION ("CWA") is a nationwide non-profit public benefit corporation organized under the laws of the District of Columbia, with offices located in Boston and Northampton, Massachusetts. CWA has approximately 50,000 members who live, recreate, and work in and around waters of the Commonwealth of Massachusetts, including the wetlands adjacent to the Facility. CWA works to protect the nation's water resources. To further this goal, CWA actively seeks Federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of CWA have a recreational, aesthetic and/or environmental interest in the wetland areas adjacent to the Facility. One or more of such members use and enjoy Bennetts Brook and its associated wetlands and waterways for recreation, sightseeing, wildlife observation and/or other activities in the vicinity of and downstream of Defendant's discharges. These members use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged. The interests of CWA's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act, as alleged herein. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

9.      Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and the citizens of the Commonwealth of Massachusetts, for which harm they have no plain, speedy, or adequate remedy at law.

10.     Defendant J.P. Routhier is a Massachusetts corporation that operates a tire recycling facility in Ayer, Massachusetts.

## STATUTORY BACKGROUND

11.     <u>Pollutant Discharges without a Permit are Illegal</u>. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by the Federal Environmental Protection Agency ("EPA") under the National Pollutant

Discharge Elimination System ("NPDES"). Sections 301(a), 402(a) and 402(p) of the Act. 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

12.    EPA Has Made Stormwater Discharges from Scrap and Waste Recycling Facilities Subject to the Requirements of EPA's General Industrial Stormwater Permit. In order to minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit"). EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, and 2015. See 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015). Scrap and waste recycling facilities are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pg. D-4.

13.    Scrap and Waste Recycling Facilities Must Comply with the Requirements of the Stormwater Permit. The Stormwater Permit requires these facilities to, among other things:

   a.   prepare a Stormwater Pollution Prevention Plan, Stormwater Permit, pg. 30;

   b.   submit to EPA an accurate "Notice of Intent" to be covered by the permit, Stormwater Permit, pg. 9;

   c.   ensure that stormwater discharges do not cause or have the reasonable potential to cause or contribute to a violation of water quality standards, Stormwater Permit, pg. 20;

   d.   ensure that pollutant control measures minimize pollutants in stormwater discharges, Stormwater Permit, pg. 14;

   e.   implement particular pollutant control measures applicable specifically to scrap and waste recycling facilities, Stormwater Permit, pgs. 125-129 (prior Permit pgs. 97-101);

   f.   monitor stormwater discharges at all Facility outfalls in each of the first four full quarters of permit coverage for compliance with benchmark limitations applicable specifically to scrap and waste recycling facilities, Stormwater Permit, pgs. 129-130 (prior Permit pg. 102);

g.  report all monitoring results for all Facility outfalls to EPA by specified deadlines, Stormwater Permit, pgs. 48-49;

h.  conduct corrective action after the average of four quarterly samples exceeds EPA benchmark value, Stormwater Permit, pgs. 27, 42;

i.  conduct routine facility inspections at least quarterly (Stormwater Permit, pg. 22) and quarterly visual assessments (Stormwater Permit, pg. 24) to, among other things, sample and assess the quality of the Facility's stormwater discharges, ensure that stormwater control measures required by the Permit are functioning correctly and are adequate to minimize pollutant discharge (Stormwater Permit, pg. 14), and timely perform corrective actions when they are not, (Stormwater Permit, pgs. 22-26);

j.  timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, pgs. 49-50; and

k.  comply with any additional state requirements, *see* Stormwater Permit, pgs. 170-171.

14.    <u>Citizens May Bring an Action to Enforce these Requirements</u>. Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

<strong>STATEMENT OF FACTS</strong>

15.    Defendant owns and operates a tire recycling facility at Berkshire Boulevard and Willow Road in Ayer, Massachusetts (the "Facility").

16.    J.P. Routhier stores large piles of tires, tire components, tire scraps and tire fragments outside at the Facility where they are exposed to precipitation.

5

17. The precipitation that comes into contact with these piles and with scrap material throughout the Facility becomes contaminated with numerous pollutants, including but not limited to zinc, iron and polycyclic aromatic hydrocarbons (PAHs).

18. Industrial machinery and heavy equipment are operated or stored at the Facility in areas exposed to stormwater flows.

19. Vehicle fueling occurs at the Facility in areas exposed to stormwater flows.

20. During every rain event, rainwater flowing over areas of the Facility becomes contaminated with pollutants. Polluted stormwater from the Facility discharges to Bennetts Brook and its tributaries.

21. J.P. Routhier does not monitor its stormwater discharges for pollutants such as zinc, iron and PAHs.

22. J.P. Routhier's Notice of Intent does not identify zinc, iron and PAHs as pollutants that may be present in its stormwater discharges.

## CAUSE OF ACTION

### Failure to Comply with a Permit for Industrial Stormwater Discharges
### Section 301(a) of the Act, 33 U.S.C. § 1311(a)

23. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

24. Between June 1, 2015 and at the earliest February 20, 2015, J.P. Routhier was discharging polluted stormwater without a NPDES permit. J.P. Routhier did not submit a Notice of Intent to be covered by the Stormwater Permit until January 21, 2016. The permit coverage became effective 30 days after EPA acknowledged receipt of J.P. Routhier's Notice of Intent.

25. Since at the latest June 1, 2015, J.P. Routhier has failed to comply with the requirements of the Stormwater Permit.

26. J.P. Routhier failed to submit an accurate and complete Notice of Intent to be covered by the Stormwater Permit.

27. First, J.P. Routhier identified itself as within the "N2" subsector. The N2 subsector is a sector for which certain monitoring and reporting exceptions apply, including an exception on the requirement to monitor for and report on the concentration of benchmark pollutants.

28. The designation of the N2 subsector does not apply to J.P. Routhier's activity. The N2 subsector applies to facilities that receive recyclable materials "primarily from non-industrial and residential sources (i.e., common consumer products including paper, newspaper, glass, cardboard, plastic containers, and aluminum and tin cans.)" Stormwater Permit, page 125.

29. The recyclable material that J.P. Routhier receives – vehicle tires and tire rims – are not "common consumer products" that fall into the same category as household items such as paper, newspaper, glass, cardboard, plastic containers, and aluminum and tin cans."

30. Second, J.P. Routhier has failed to submit an accurate and complete Notice of Intent because it failed to identify zinc, iron and PAHs as pollutants likely to be present in its stormwater discharges.

31. J.P. Routhier has failed to monitor and report for benchmark pollutants, as required by the Stormwater Permit.

32. J.P. Routhier has failed to perform required inspections and submit annual reports as required by the Stormwater Permit.

33. J.P. Routhier has failed to "minimize" pollutants in its stormwater discharges as required by the Stormwater Permit (pg. 14).

34. Each of the above described violations is a separate and distinct violation of the Act for each day on which the violation occurred.

35. J.P. Routhier's violations of the Stormwater Permit are ongoing.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1. Declare Defendant to have violated and to be in violation of the Act as alleged herein;

2. Enjoin Defendant from discharging contaminated stormwater from the Facility;

3.      Require Defendant to implement the requirements of the Stormwater Permit;

4.      Order Defendant to pay civil penalties of up to $37,500 per day of violation, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 74 Fed. Reg. 626, 627 (2009);

5.      Order Defendant to take appropriate actions to restore the quality of navigable waters impaired by its activities;

6.      Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

7.      Award any such other and further relief as this Court may deem appropriate.

Dated: 3/3/2016                                   Respectfully submitted,


                                                 */s/Nora J. Chorover*
                                                 NORA J. CHOROVER (Bar No. 547352)
                                                 Law Office of Nora J. Chorover
                                                 11 Green Street
                                                 Boston, MA  02130
                                                 Phone: 617-477-3550
                                                 nchorover@choroverlaw.com

                                                 Attorney for Plaintiff
                                                 CLEAN WATER ACTION


### CLEAN WATER ACTION'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Massachusetts District Court Local Rule 7.3, Plaintiff Clean Water Action states that it does not have a parent corporation and no publicly held company owns 10% or more of its stock.